IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KELLY FREDERICKSON,

    Petitioner,                       No. CIV S-08-1869 GGH P

    vs.

ANTHONY HEDGEPETH,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

                              /

            Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction for first degree murder. This action is proceeding on the original petition filed August 12, 2008, raising the following claims: 1) the trial court improperly precluded defense expert Dr. Pittel from testifying regarding petitioner's mental state at the time of the offense; 2) the trial court improperly precluded Dr. Pittel from testifying that petitioner's co-defendant[1] corroborated petitioner's statement that he had used methamphetamine; 3) the prosecutor committed misconduct by misstating the law of manslaughter; 4) the trial court improperly denied his

---

[1] While petitioner refers to this person, Emmanuel Lapuste, as a "co-defendant," Lapuste was not on trial with petitioner and nor is there any indication in the record that he was ever convicted of a crime related to this incident.

motion for a new trial which presented new evidence regarding petitioner's mental state; 5) the lying in wait special circumstance is vague, overbroad and arbitrarily applied; 6) trial counsel was ineffective for failing to call witness Lapuste.

Pending before the court is petitioner's May 18, 2009, motion to stay this action pending further exhaustion. On June 18, 2009, a hearing was held regarding this motion. Wanda Hill Rouzan appeared on behalf of respondent. Eric Milthuaup appeared on behalf of petitioner. For the following reasons, the court recommends that the motion be denied.

In the pending motion, petitioner seeks a stay so that he may exhaust claim 6 (ineffective assistance of counsel). Petitioner also states that he will exhaust claim 5 (challenge to lying in wait special circumstance) because respondent contends that it has not been raised in state court, although he believes this claim is exhausted.

The court first considers whether claim 5 is exhausted. The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion, thus, may not be implied or inferred. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S. Ct. 509, 512 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986).

In his state appellate opening brief, petitioner argued the lying in wait special circumstance was unconstitutionally overbroad in violation of state law. Respondent's Lodged Document 1, pp. 53-55. In his petition for review, petitioner argued that the lying in wait special circumstance was unconstitutionally overbroad in violation of the United States Constitution. Respondent's Lodged Document 3, p. 12.

California Rule of Court 8.500 provides that on petition for review, the California Supreme Court will not consider an issue that the petitioner failed to timely raise in the Court of

1  Appeal. Cal. Rule of Court 8.500(c). Because petitioner did not raise his federal constitutional
2  claim in his state appellate brief, the California Supreme Court did not consider this claim raised
3  in the petition for review. Claims are not fairly presented if they are raised in a procedural
4  context in which the merits will not be considered absent special circumstances. Castille v.
5  Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056 (1989). Accordingly, the court finds that claim 5 is
6  not exhausted because it was not presented in the proper procedural context.

7  In the reply brief and at oral argument, petitioner's counsel argues that Cal. Rule
8  of Court 8.508 permits abbreviated petitions for review. Petitioner contends that his brief
9  statement of his claim in his petition for review exhausted claim 5. Had petitioner raised his
10 federal claim in his state appellate brief, the court might find his claim exhausted, despite his
11 abbreviated briefing of the claim. However, because this claim was not raised in the state
12 appellate brief, the court need not reach the issue of whether the claim was adequately pled in the
13 petition for review.

14 Accordingly, the court now turns to petitioner's request to stay. In Rhines v.
15 Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005), the Supreme Court held that federal district courts
16 have the authority to stay mixed petitions pending further exhaustion in limited circumstances.
17 Rhines, 544 U.S. at 277, 125 S.Ct. 1528. "[S]tay and abeyance is only appropriate when the
18 district court determines there was good cause for the petitioner's failure to exhaust his claims
19 first in state court" and where petitioner's unexhausted claims are not "plainly meritless." Id.
20 Even if petitioner demonstrates the requisite good cause and presents potentially meritorious
21 claims, a stay still will not be appropriate if there is any indication that petitioner engaged in
22 intentionally dilatory litigation tactics. Id. at 278.

23 In King v. Ryan, 564 F.3d 1133 (9th Cir. 2009), the Ninth Circuit recently held
24 that in addition to the stay procedure authorized in Rhines, district courts also have discretion to
25 permit petitioners to follow the three-step stay-and-abeyance procedure approved in Calderon v.
26 U.S. Dist. Ct. (Taylor), 134 F.3d 981, 986 (9th Cir. 1998) and Kelly v. Small, 315 F.3d 1063 (9th

Cir. 2003). Pursuant to the Kelly procedure, (1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition. Kelly, 315 F.3d at 1070-71. The Kelly stay-and-abeyance procedure has no requirement of a good cause showing or that the claims are potentially meritorious.[2]

At the June 18, 2009, hearing, the court discussed with petitioner's counsel whether he opted for a Rhines stay or a Kelly stay. The court advised counsel that were he to proceed with a Kelly stay, he risked having his claims found barred by the statute of limitations following exhaustion. In particular, the court discussed the potential that the unexhausted claims would not relate back to any of the exhausted claims. Counsel informed the court that he wished to proceed with a Rhines stay. Accordingly, the court considers petitioner's motion to stay pursuant to the standards in Rhines.

Rhines does not go into detail as to what constitutes good cause for failure to exhaust, and the Ninth Circuit has provided no clear guidance beyond holding that the test is less stringent than an "extraordinary circumstances" standard. Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005). Several district courts have concluded that the standard is more generous than the showing needed for "cause" to excuse a procedural default. See, e.g., Rhines v. Weber, 408 F.Supp.2d 844, 849 (D.S.D. 2005) (applying the Supreme Court's mandate on remand). This view finds support in Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807 (2005) where the Supreme Court acknowledged that a petitioner's "reasonable confusion" about the timeliness of his federal petition would generally constitute good cause for his failure to exhaust state remedies

---

[2] Until King v. Ryan was decided, this court had been under the impression that Rhines foreclosed implementation of the Kelly stay-and-abeyance procedures. The procedural twists and turns of habeas corpus proceedings have surpassed complex.

1 | before filing his federal petition. 544 U.S. at 416-17, 125 S.Ct. 1807.

2 |       Even under this more lenient standard, the court finds that petitioner has not shown good cause for his failure to exhaust claims five and six. As to claim five (challenge to lying in wait special circumstance) it appears that petitioner inadvertently failed to raise this claim in his state appellate briefing, thus dooming any consideration of it in his petition for review. This does not constitute good cause for failing to previously exhaust this claim.

      Turning to claim six, petitioner alleges that his counsel was ineffective for failing to call Emmanuel Lapuste as a defense witness in support of his manslaughter defense. Lapuste apparently would have corroborated information that petitioner gave to his testifying doctor expert that he had consumed a large amount of methamphetamine in the days prior to the murder. See Respondent's Lodged Document 1, Petitioner's Appellate Brief, pp. 37-38. Without this corroborating information, the expert doctor testified that he could not offer an opinion as to the effects of the recently ingested methamphetamine on petitioner at the time of the killing, although he did testify about the effects of long term methamphetamine abuse.

      On direct examination, Dr. Pittal testified that he learned that petitioner had a long history of methamphetamine abuse. RT at 482. This he independently verified after talking to a woman who had been in drug rehabilitation with petitioner and his wife. RT at 482. He testified that the only evidence he had of petitioner's methamphetamine use in the days leading up to the crime was what petitioner told him. RT at 482. He had not been able to corroborate this information. RT at 482. Dr. Pittal went on to testify about the effects of long term methamphetamine abuse. RT at 484-489.

      On cross-examination, Dr. Pittal was asked if everything he testified to was accurate:

> Q: And you believe that everything you testified to today is accurate, and you haven't been misled in any of those things; is that correct?
>
> A: I don't believe–except for information having to do with Mr. Fredericksen's use of methamphetamine in the days prior to this, and the depression that he

5

> experienced after breaking up with a girlfriend, none of which I have been able to corroborate, and therefore I can't testify about it. I believe I have been able to corroborate all of the other essential details to which I have testified.

RT at 502.

At the time of trial, petitioner's investigator had transcribed an interview with Lapuste which apparently contained the same information petitioner now claims Lapuste would have testified to. Id., p. 38.

In the pending motion, petitioner argues that he could not have raised his ineffective assistance of counsel claim earlier because Lapuste could not be located, despite diligent efforts. Petitioner states that he is informed that Lapuste has returned to the Butte County area and is willing to provide a statement or declaration regarding his knowledge of the circumstances of the offense and his availability to testify at trial.

In opposition, respondent argues that because the transcript of the Lapuste interview by the defense investigator should have been available to petitioner, he had some documentary basis for going forward with his claim in the state proceeding. The court agrees. Because petitioner's present ineffective assistance of counsel claim is apparently based on the information in this transcript, he could have raised this claim earlier in state court. The court does not agree with petitioner that he was entitled to wait until Lapuste could be found before exhausting this claim. The problem with this argument is that it could have taken years for Lapuste to resurface, at which time the evidence would have been stale and any other necessary witnesses possibly unavailable. Because petitioner had access to the transcript containing the necessary information, and the ability to seek further investigation in the state court, the court finds that he has not shown good cause for failing to raise this claim at an earlier time.

The court has also considered whether petitioner's ineffective assistance of counsel claim is "plainly meritless." In order to put this discussion in context, the court sets forth the background of petitioner's offense, as described in the opinion of the California Court of Appeal. After independently reviewing the record, the court finds this summary to be accurate

and adopts it below:

> The victim, Ron Bailey, and a friend, Ed Gomez, went to defendant's apartment to buy some drugs from another individual, Emanuel Lapuste. Shasta Flotka, who was living with defendant at the time, recognized Bailey and later told defendant that Bailey had drugged and raped her sister.
>
> Later, Lapuste called Gomez and asked Gomez to give him and defendant a ride. Gomez and Bailey then picked up Lapuste and defendant, and Gomez followed Lapuste's instructions and drove to a wooded area outside Oroville. They pulled off the road onto a dirt driveway, then got out of the car and began walking up the driveway at Lapuste's direction. Eventually, defendant told them they had gone far enough, and they stopped to spoke. As Gomez was lighting Bailey's cigarette, defendant suddenly attacked Bailey with a knife.
>
> Defendant stabbed Bailey at least 27 times, and Bailey died from blood loss from multiple penetrating stab wounds to his chest and head.
>
> Defendant testified at trial that he was "overwhelmed with anger" because of what Shasta told him and because he believed Bailey had "touched" his daughter when Bailey was in his apartment. Defendant claimed he planned only to "assault [Bailey] with a deadly weapon, cut off his penis or stab him in the penis," but did not think about killing him. Once he punched Bailey, however, he "just snapped" and began to stab Bailey. Later, defendant and Lapuste went back and moved Bailey's body into the brush, and later still defendant returned, dragged the body back into the road, and "attempted to cremate it with gasoline and matches."
>
> Defendant argued the jury should convict him of voluntary manslaughter, but the jury rejected that argument and convicted him of first degree murder with the special circumstance of lying in wait.

Respondent's Lodged Document .

The factual back ground to petitioner's ineffective assistance of counsel claim is contained in the California Court of Appeal's discussion of petitioner's claim that the trial court erred in refusing to permit Dr. Pittel to refer to Lapuste's corroborating statement:

> During cross-examination, Dr. Pittel testified that he had been able to corroborate "all of the ... essential details to which [he] testified" "except for information having to do with [defendant]'s use of methamphetamine in the days prior to [the incident], and the depression that he experienced after breaking up with a girlfriend." When the prosecutor asked specifically about his inability to corroborate defendant's methamphetamine use, Dr. Pittel responded: "Other than his statement to that effect, I have no evidence. I have not read the transcript of an interview that [defense counsel] and his investigator had with Mr. Lapuste, who I believe corroborate...." The prosecutor interrupted, asking for a bench conference. At that conference, the court stated, "Can't have any references to Mr. Lapuste here." The prosecutor complained he had not been provided with any witness

> statement of Lapuste, and when asked if there were any, defense counsel responded, "We usually had to provide statements when we call somebody as a witness." Noting that Lapuste was "not a witness," the court ruled "[a]ny information he supplied should not be considered." Defense counsel suggested Dr. Pittel should be able to refer to Lapuste in responding to the prosecutor's question about corroboration, but upon the prosecutor's continued assertion that he had not been provided with any statement from Lapuste, the court ruled, "I think we should stay clear of any information regarding Lapuste." Defense counsel responded, "All right."
>
> Later, the subject of corroboration arose again when, in responding to a question about whether "a criminal defendant in a case has a motive, a self [-]interest in whatever he says to you," Dr. Pittel responded, "Sure. That's why corroboration is so important." The prosecutor then asked if Dr. Pittel, in his report, had "corroborated what [defendant told him] about what happened to Ron Bailey." Dr. Pittel initially expressed uncertainty about "what aspects of it [the prosecutor was] referring to," but then responded, "[Defendant] acknowledged that he stabbed Mr. Bailey. He described the circumstances. I gather from the bench conference that was held that I can't speak to certain information that I have, but...." The prosecutor interrupted, telling Dr. Pittel he could not "refer to anything Mr. Lapuste has said." Dr. Pittel responded, "I won't refer to it specifically, other than to say that my understanding is that his account was in accord with the information that I received from [defendant]." The prosecutor asked, "Mr. Lapuste's account of what happened to Mr. Bailey?" and defense counsel interjected, "Hold on, judge. We either can or can't." The court then admonished the jury "to disregard any information that came from the mouth of Mr. Lapuste."
>
> On appeal, defendant contends the trial court "erred in refusing to permit Dr. Pittel to refer to the statement of Emanuel Lapuste that corroborated the statement he had received from [defendant]." Defendant further contends this error deprived him of his federal constitutional rights to due process, a fair trial, and to present evidence. Defendant is wrong on both counts.
>
> Defendant's assertion of error is based on the premise that an expert witness is allowed to testify about the matter on which his opinion is based, even if that matter would otherwise be inadmissible. (See Evid.Code, §§ 801, 802.) While that principle is generally true, it does not apply to any statement by Lapuste because Dr. Pittel did not base his opinion on any such statement. Indeed, Dr. Pittel specifically admitted that he "ha[d] not read the transcript of [the] interview that [defense counsel] and his investigator had with Mr. Lapuste...." Dr. Pittel's opinion could not have been premised on a statement he never read. Thus, defendant has failed to show any error in the trial court's ruling regarding Lapuste. It follows that, having failed to show any error, defendant has necessarily failed to show any error of federal constitutional magnitude.

Respondent's Lodged Document 2, pp. 10-13.

        In the instant claim, petitioner alleges that trial counsel should have called Lapuste to corroborate what petitioner told Dr. Pittal regarding the amount of methamphetamine he

ingested in the days leading up to the killing.  Petitioner contends that with this corroborating testimony, Dr. Pittal could have offered an opinion regarding the effects of the recently ingested methamphetamine on petitioner.

At trial, petitioner's counsel argued that the jury should find him guilty of voluntary manslaughter.  The problem with the instant ineffective assistance of counsel claim is that voluntary intoxication does not negate implied malice and reduce murder to voluntary manslaughter.  People v. Saille, 54 Cal.3d 1103, 1112-1114, 2 Cal.Rptr.2d 364 (1991).  For this reason, the court does not find that trial counsel was ineffective for failing to call a witness to bolster his defense that he was guilty of voluntary manslaughter based on voluntary intoxication as this was not a valid legal defense.

Although not argued by petitioner, the court notes that when a person becomes unconscious through voluntary intoxication and commits a homicide, the killing is attributed to his own negligence in self-intoxicating and he is guilty of the lesser included offense to murder of involuntary manslaughter.  People v. Albilez, 41 Cal.4th 472, 516 (2007).  Unconsciousness for this purpose does not mean that the person is still and unresponsive.  People v. Ochoa, 19 Cal.4th 353, 423-424, 79 Cal.Rptr. 408 (1998).  Rather, a person is deemed unconscious if he committed the act without being conscious thereof.  Id.  One court has described that level of unconsciousness as being that of an automaton.  People v. Webber, 28 Cal.App.3d 1146, 1163, 279 Cal.Rptr. 437 (1991).

It is clear from the record that petitioner was not intoxicated to the point that he was unconscious.  At trial, petitioner testified that he and Lapuste planned to take the victim into the hills and beat him up.  RT at 375.  Petitioner testified that he began attacking the victim as they were lighting cigarettes.  RT at 381.  After the incident, petitioner and Lapuste dropped Ron Gomez off somewhere then returned to Bailey's body.  RT at 386.  They moved the body to the side of the road.  RT at 386.  About 24 hours later, petitioner returned to Bailey's body and poured gasoline on it and lit it on fire.  RT at 388.

In an interview with a detective, petitioner stated that he took Bailey's wallet immediately after the killing. RT at 398. In what appears to have been an attempt to seem less culpable, on cross-examination, he testified that he took the wallet when he returned to drag the body to the side of the road. RT at 389.

This record reflects that petitioner was not unconscious as a result of voluntary intoxication at the time of the killing. Accordingly, the court does not find that Lapuste's testimony regarding petitioner's methamphetamine use in the days prior to the murder would have demonstrated that petitioner was guilty of involuntary manslaughter.[3]

Because petitioner has failed to demonstrate cause for his failure to exhaust claims five and six, and because claim 6 (ineffective assistance of counsel) is plainly meritless, his motion to stay should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's motion to stay (no. 15) be denied, the unexhausted claims be stricken, and respondent be ordered to answer to the exhausted claims. The Clerk is directed to assign a district judge to this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

\\\\\
\\\\\
\\\\\

---

[3] Evidence of voluntary intoxication may be offered as evidence that a defendant did not act with deliberation, premeditation or express malice aforethought. Cal. Penal Code § 22; People v. Boyer, 38 Cal.4th 412, 469 n. 40 (2006). Petitioner does not seek to exhaust such a claim.

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: 07/07/09

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

fred1869.mtd(2)